**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

    **v.**                               **CRIM. NO. 2:11cr34-13**

**AHMED SALA ALI BURALE,**

        **Defendant.**

### OPINION

This matter comes before the court on Defendant's "Motion for a Reduction of Sentence Under the First Step Act Pursuant to 18 U.S.C. § 3582(c)(1)(A)" ("Motion"). ECF No. 1182. For the reasons explained below, Defendant's Motion is **DENIED**.

### I. BACKGROUND

On May 25, 2011, Defendant pleaded guilty to Count One of a three (3) count Indictment. Count One charged Defendant with Piracy Under the Law of Nations, in violation of 18 U.S.C. §§ 1651, 3238, and 2. ECF No. 3 at 2-3. On October 7, 2011, United States District Judge Mark S. Davis of this court sentenced Defendant to the statutory mandatory minimum of life imprisonment, along with a five (5) year term of supervised release. ECF No. 343 at 1-3. Defendant never directly appealed his conviction or sentence, and never mounted a collateral attack under 28 U.S.C. § 2255. However, upon motion of the United States, ECF No. 948, the undersigned issued an Order on October 14, 2014, exercising the court's

discretion and reducing Defendant's term of imprisonment from life to thirty-five (35) years. ECF No. 954.[1]

Defendant, pro se, filed the instant Motion and associated Exhibits on December 14, 2021. ECF No. 1182. On February 2, 2022, the United States submitted a Response in Opposition to the Motion, ECF No. 1186, along with Defendant's Bureau of Prisons ("BOP") medical records, which were filed under seal, ECF No. 1188 ("Medical Records"). On February 4, 2022, the court received an additional submission from Defendant updating the court concerning the conditions at his facility. ECF No. 1189. Defendant replied to the United States' Response on March 1, 2022. ECF No. 1193. Having been fully briefed, Defendant's Motion is now ripe for disposition.

## II. EXHAUSTION OF REMEDIES

Before the court may consider a motion under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a

---

[1]     Defendant incorrectly characterizes this as a "resentenc[ing]" following his "appeal." ECF No. 1182 at 4. He represents that the Fourth Circuit "remanded [the matter] back for resentencing" because he "receiv[ed] an unconstitutional life sentence." See id. at 31. This an entirely inaccurate description of the procedural history in this case: Defendant's sentence reduction was the product of a government motion and the undersigned's resulting exercise of discretion, not a resentencing to remedy an unlawful sentence.

request by the warden of the defendant's facility." Id.
§ 3582(c)(1)(A). The Fourth Circuit recently explained that
defendants may satisfy this exhaustion requirement by "wait[ing]
30 days from the date of their initial request to file a motion in
the district court," even if the warden has already responded to
their request. United States v. Muhammad, 16 F.4th 126, 131
(4th Cir. 2021) (collecting cases). The court further clarified
that the exhaustion requirement "is a non-jurisdictional
claim-processing rule," and therefore "may be waived or
forfeited." Id. at 130.

Defendant submitted a request for compassionate release to
the warden of his institution on July 16, 2021. ECF No. 1182-3
at 2. Because more than thirty (30) days have passed since
Defendant made his request, he has satisfied the threshold
exhaustion requirement. See 18 U.S.C. § 3582(c)(1)(A).

### III. MERITS OF DEFENDANT'S MOTION

For a court to reduce a defendant's sentence under
§ 3582(c)(1)(A)(i), it must find that "extraordinary and
compelling reasons" justify such a reduction. The defendant bears
the burden of showing that this requirement is satisfied. See,
e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021);
United States v. Noel, No. 3:08-cr-186-03, 2021 WL 1602402, at *2
(E.D. Va. Apr. 23, 2021) (Payne, J.). Even if a defendant carries
his burden, a court may only reduce his sentence "after considering

3

the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A). Any such reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id.; see United States v. McCoy, 981 F.3d 271, 275-76 (4th Cir. 2020).

In McCoy, the Fourth Circuit held that, in the context of prisoner-filed § 3582(c)(1)(A) motions, "there currently exists no 'applicable policy statement'" because the Commission has not issued a policy statement since the passage of the First Step Act. 981 F.3d at 281-82 (alteration omitted). Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (alteration omitted) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)); see United States v. Davis, No. 21-6960, 2022 WL 127900, at *1-2 (4th Cir. Jan. 13, 2022) (holding district court abused discretion in determining that certain claims "categorically" could never "establish a sufficient reason for release"). In particular, the Fourth Circuit held that courts "may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." McCoy, 981 F.3d at 285-86.

4

Whatever a defendant argues, the overarching purpose of the compassionate release mechanism guides district courts:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances – when sufficiently extraordinary and compelling – than to society's interests in the defendant's continued incarceration and the finality of judgments.

United States v. Hargrove, --- F.4th ---, 2022 WL 905436, at *6 (4th Cir. 2022). Ultimately, therefore, the court must "balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other." See id.

Although the policy statement in United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 1B1.13 is no longer binding on this court in this case after the Fourth Circuit's decision in McCoy, the court finds that certain of its provisions remain "helpful guidance" in striking this balance. See McCoy, 981 F.3d at 282 n.7. For example, the court will still consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," U.S.S.G. § 1B1.13, and whether "[t]he defendant is . . . a danger to the safety of any other person or to the community," id. § 1B1.13(2), because these considerations remain highly relevant to whether a reduction in sentence is warranted in this case.

5

## A. EXTRAORDINARY AND COMPELLING REASONS

Defendant offers five (5) matters which he contends amount to "extraordinary and compelling reasons" for a reduction in sentence pursuant to § 3582(c)(1)(A)(i):

(1) sentencing disparities between him and similarly situated defendants, see ECF No. 1182 at 5, 24, 30-31;

(2) the ongoing novel coronavirus ("COVID-19") pandemic, see id. at 8-21; ECF No. 1189; ECF No. 1193 at 5-8;

(3) his rehabilitation while incarcerated, see ECF No. 1182 at 19-23; ECF No. 1193 at 5-8;

(4) jurisdictional infirmities underlying his conviction and sentence, see ECF No. 1182 at 31-33; and

(5) his desire to be with his family, see id. at 33; id. Ex. 3 at 2.

For the reasons explained below, the court finds that none of these issues, individually or in combination, amount to an "extraordinary and compelling reason[]" for a reduction in sentence. See Davis, 2022 WL 127900, at *2 (vacating and remanding denial of compassionate release where there was "no indication that the district court considered [the defendant's] circumstances, as a whole").

### 1. Sentencing Disparities

Defendant argues that under current law, he "would have been sentenced even less than the 35-year sentence he is now serving." See ECF No. 1182 at 31; see also id. at 24, 28-32. According to him, his continued incarceration "would all be in disparity of

6

sentences handed down today," and the time he has already served "exceeds, many times over, the sentence [Defendant] would have received had this same offense been prosecuted in State Court." Id. at 24. Defendant also submits that the court would have sentenced him to a lesser term of imprisonment following the Supreme Court's decision in Alleyne v. United States, 570 U.S. 99 (2013). ECF No. 1182 at 31. These arguments are meritless.

Though Defendant references the Fair Sentencing and First Step Acts, those laws bear little relevance on how he would be sentenced today, as they did nothing to alter how his offense of conviction is prosecuted or his eligibility for a "safety valve" reduction. Defendant was convicted of Piracy Under the Law of Nations under 18 U.S.C. § 1651, which calls for a mandatory minimum sentence of life imprisonment, just as it did when the court sentenced Defendant. Though Defendant contends that he now "would be entitled to a . . . downward departure and/or safety valve reduction," this is entirely inaccurate. ECF No. 1182 at 30. Defendant "possess[ed] a firearm . . . in connection with [his] offense," making application of the safety valve inappropriate. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Furthermore, the court also observes that this is a uniquely federal offense, lacking state-law analogues. Defendant provides no examples of similar prosecutions - under state or federal law - giving rise to the disparity he alleges.

7

His argument concerning intervening Supreme Court precedent likewise fails. Defendant contends that applying the holding of Alleyne to his circumstances would compel the court to impose a lesser sentence today. ECF No. 1182 at 31. Specifically, he cites Alleyne in support of his contention that the court's imposition of "a sentencing enhancement[] at [the] time of sentencing was a violation of [his] due process and [] Sixth Amendment right to trial." See ECF No. 1182 at 31.

Alleyne explains that a defendant's right to trial by jury includes the right to jury factfinding for any fact triggering a mandatory minimum sentence. See 570 U.S. at 103.   However, Defendant waived this right, pleaded guilty, and agreed that his acts were sufficient to support a conviction for his offense. ECF No. 208 ¶ 4 (Plea Agreement discussing waiver of rights); ECF No. 209 ("Statement of Facts" ("SOF")). The mandatory minimum life sentence was therefore imposed in accordance with Defendant's constitutional rights.[2]

In sum, Defendant does not articulate "extraordinary and compelling reasons" for a reduction in sentence based on sentencing disparities.

---

[2] See supra note 1 and accompanying text.

## 2. Effect of COVID-19 on Defendant

Defendant submits that the effect of the ongoing COVID-19 pandemic on his health conditions and conditions of incarceration warrants a reduction in sentence. ECF No. 1182 at 8-21; ECF No. 1189; ECF No. 1193 at 5-8. Specifically, he represents that he suffers from high blood pressure, diabetes, and obesity; is immunocompromised; is incarcerated at an institution that is not adequately protecting prisoners from the virus; and has had his movement restricted since March 2020. ECF No. 1182 at 8-21; ECF No. 1193 at 5-8.

"Fear of COVID doesn't automatically entitle a prisoner to release." United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021). Rather, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (Novak, J.) (emphasis added); see Hargrove, 2022 WL 905436, at *5 (affirming order applying this standard). For the reasons explained below, Defendant fails to cross either of these thresholds.

### i. Particularized Susceptibility

According to Defendant's Medical Records, BOP personnel assessed Defendant on December 6, 2021. ECF No. 1188 at 3. The

9

provider noted three conditions that Defendant was suffering from at the time: esophageal reflux, essential (primary) hypertension, and hyperlipidemia. Id. at 5. The provider also noted that Defendant's mother has been diagnosed with hypertension and type two diabetes. See id. at 3 (noting mother's "HTN" and "DM-2"). While Defendant claims that he is obese and suffers from diabetes, his body mass index ("BMI") places him in the category of "overweight" rather than "obese,"[3] and there is no evidence of him suffering from diabetes. The court also observes that Defendant has previously suffered from other conditions that have resolved under BOP care. See ECF No. 1188 at 19-22.

Though the court recognizes that Defendant's conditions could place him at heightened risk of severe illness or death should he contract COVID-19, at this juncture, Defendant does not appear to be particularly susceptible to these adverse outcomes. As a general matter, the BOP appears to be effectively handling Defendant's conditions. See ECF No. 1188. Defendant's Medical Records reveal that staff have managed his medical problems as they arose, closely monitored his status, prescribed him medication as needed, and counseled him concerning how to manage his conditions and prevent

---

[3]   Defendant is 73 inches tall, ECF No. 318 ("Presentence Investigation Report" ("PSR")) at 2, and was 223 pounds as of December 6, 2021, ECF No. 1188 at 4. This yields a BMI of 29.4. See CDC, Adult BMI Calculator, https://www.cdc.gov/healthy weight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calcul ator.html.

exposure to COVID-19. See, e.g., id. at 3-10 (provider notes from two exams); id. at 3, 5 (ordering cholesterol medication refill to address Defendant's concern); id. at 19-22 (documenting diagnoses as well as current and resolved conditions); id. at 27, 36, 49 (medications); id. at 12, 17-18 (counseling); id. at 38-39, 55-59, 62-65 (monitoring). Moreover, the record does not reflect that Defendant's conditions prevent him from caring for himself in prison. See United States v. Mumford, 544 F. Supp. 3d 615, 618 (E.D. Va. 2021) (Smith, J.) (concluding that the defendant's medical conditions amounted to "extraordinary and compelling reasons," in part, because they substantially diminished his ability to care for himself in a correctional setting).

Importantly, Defendant has also received two doses of the highly effective Pfizer-BioNTech COVID-19 vaccine. ECF No. 1188 at 25.[4] Despite his medical conditions, Defendant's inoculation will vastly decrease his chances of suffering severe complications if he does ultimately become infected in the future. See United States v. Sanders, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (holding that defendant's "vaccination status remove[d] his other medical conditions from the category of risk constituting an 'extraordinary and compelling reason,'" and

---

[4] CDC, Pfizer-BioNTech COVID-19 Vaccine (also known as COMIR NATY): Overview and Safety, https://www.cdc.gov/coronavirus/2019 -ncov/vaccines/different-vaccines/Pfizer-BioNTech.html.

collecting cases concluding the same); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order.").

The high probability of this outcome is further bolstered by the fact that Defendant has already recovered from his post-vaccination January 2022 COVID-19 infection, and Defendant has not presented any evidence of significant complications.[5] Indeed, Defendant's Reply, filed after this infection resolved, does not even mention that he recently tested positive for the virus. See ECF No. 1193 (signed February 24, 2022). On this record, the BOP's adequate provision of medical care, paired with Defendant's recent recovery from a COVID-19 infection, "undercuts the argument that he is particularly susceptible to extreme illness or death from COVID-19, or that the [BOP] would be ineffective in managing his illness in the off-chance he contracts COVID-19 again." See United States v. Aqid, 555 F. Supp. 3d 279, 282 (E.D. Va. 2021) (Smith, J.).

In sum, Defendant has failed to provide sufficient evidence to satisfy the "particularized susceptibility" prong. Instead, "it

---

[5] Defendant tested positive for COVID-19 on January 12, 2022, and his Medical Records indicate that this issue resolved on January 26, 2022. ECF No 1188 at 22.

appears that the conditions on which [Defendant] bases his motion are 'chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release.'" United States v. Ferguson, No. 3:04-cr-13-01, 2021 WL 1701918, at *3 (E.D. Va. Apr. 29, 2021) (Payne, J.) (quoting United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020)); see Hargrove, 2022 WL 905436, at *4-5 (holding district court did not abuse discretion in finding that a defendant's evidence of asthma, high blood pressure, and sleep apnea did not establish extraordinary and compelling reasons).

## ii. Particularized Risk

Defendant also argues that the conditions at his facility, FCI Yazoo City Medium, warrant his release. See ECF No. 1182 at 8-13; ECF No. 1189; ECF No. 1193 at 5-7. Though prisoners at this institution have been infected with COVID-19 in the past, Defendant fails to demonstrate that he faces a particularized risk of contracting COVID-19 at his facility.

As Defendant points out, his facility has experienced significant outbreaks of the virus in the past. See ECF No. 1193-1. That said, a large number of inmates and staff at the prison complex that encompasses FCI Yazoo City Medium have now been

inoculated against COVID-19 with vaccines shown to be effective[6] at preventing serious COVID-19 illness.[7] And as of May 6, 2022, FCI Yazoo City Medium had zero (0) active cases of COVID-19 among inmates and staff members.[8]

The court finds that the low prevalence of COVID-19 at Defendant's facility, particularly in light of the BOP's ongoing vaccination and mitigation efforts,[9] does not subject Defendant to a particularized risk of contracting the virus. See United States v. Spencer, 521 F. Supp. 3d 606, 612 (E.D. Va. 2021) (Smith, J.) (denying motion where the defendant's facility had only two (2) active COVID-19 cases among inmates). Though the court sympathizes with Defendant's frustration with his restricted movement, this is something that the entire population - incarcerated or not - has endured throughout the pandemic.

---

[6] CDC, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[7] As of May 6, 2022, 466 staff members and 3,090 prisoners at Yazoo City FCC have been fully vaccinated against COVID-19. BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/corona virus/.

[8] BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/.

[9] BOP, FCI Yazoo City Medium, https://www.bop.gov/locations/ institutions/yam/ (noting modifications to prison operations due to COVID-19); BOP, COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guid e.jsp (describing modifications).

Thus, Defendant has not demonstrated a particularized susceptibility to COVID-19, or that he faces a particularized risk of contracting the virus at FCI Yazoo City Medium, and therefore has not shown extraordinary or compelling reasons justifying a sentence reduction on this basis.

### 3. Rehabilitation and Other Postconviction Conduct

Defendant argues that his rehabilitation and good behavior while incarcerated justify a sentence reduction under § 3582(c)(1)(A)(i). ECF No. 1182 at 19-22; ECF No. 1193 at 8-11. As evidence of his rehabilitation, Defendant submitted a BOP record documenting his completion of roughly twenty (20) educational courses, that he currently holds a prison job, that he has completed a drug education program, and that he had not incurred a disciplinary infraction in the preceding six (6) months. ECF No. 1182-4 at 2-4. Defendant argues that these positive steps "speak[] volumes" about his "desire to self improve," especially considering that he initially was serving a life sentence with no prospect of release. See ECF No. 1193 at 8-9. In addition, Defendant submits that he presents a low risk of recidivism, and that his prior sentence reduction suggests that an additional reduction is proper. Id. at 10. The court also accepts Defendant's representation that he "has not received any disciplinary citations or incident reports in eleven years . . . ." Id. While Defendant's postconviction conduct bodes well for a successful

15

period of supervised release, it does not justify a further sentence reduction.

The court first notes that rehabilitation, alone, does not constitute an "extraordinary and compelling reason" for a reduction in sentence. 28 U.S.C. § 994(t). But the court recognizes that it may consider rehabilitation and other postconviction conduct, when paired with other factors, as an "extraordinary and compelling reason[]" for relief. 18 U.S.C. § 3582(c)(1)(A)(i); see also Davis, 2022 WL 127900, at *1 ("successful rehabilitation efforts can be considered as 'one among other factors'" (quoting McCoy, 981 F.3d at 286 n.9)). On these facts, however, Defendant's rehabilitation argument does not articulate an extraordinary or compelling reason for a reduction in sentence in light of the full considerations herein of other matters raised by Defendant and the factors under 18 U.S.C. § 3553(a).[10]

While the court commends Defendant for taking the steps he has to improve himself, these steps are not "extraordinary." Instead, it appears to the court that Defendant has simply "do[ne] the things that prisoners are supposed to do" while incarcerated. United States v. Logan, 532 F. Supp. 3d 725, 735 (D. Minn. 2021) ("Prisoners are supposed to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a

---

[10] See infra Part III.B.

16

prisoner does so means that he has met baseline expectations, not that he has done something extraordinary.").

The court is satisfied that Defendant has met this baseline expectation and does not believe Defendant is "incorrigible." See ECF No. 1193 at 10 (arguing that earlier sentence reduction illustrates that Defendant is not "incorrigible"). Nevertheless, the court finds that Defendant's postconviction conduct, in combination with the other reasons offered, is not so extraordinary as to warrant a further reduction in sentence.

### 4. Jurisdictional Infirmities

Defendant points to various treaties, purported principles of international law, and court decisions claiming that the trial court lacked jurisdiction over his offense because there was "no treaty with Somalia," and because there were "no human rights violations . . . to trigger a piracy statute and conviction (where [his] crime/conviction lacked any mental state of intent under mens rea)." Id. at 32-33. This argument fails for multiple reasons.

First, Defendant's claim that he lacked a required mental state, which somehow deprived the court of jurisdiction over his offense, is unsupported. See id. (mentioning "the Hague Act" and mens rea). In the Statement of Facts, Defendant conceded that he committed the conduct satisfying elements of his offense "willfully and knowingly with the specific intent to violate the

law." SOF ¶ 10. He therefore admitted to his culpable mental state as to each element of his offense.

In addition, as a general matter, district courts' jurisdiction over foreign nationals charged with committing Piracy Under the Law of Nations is well-settled. See United States v. Hasan, 747 F. Supp. 2d 599, 606-620 (E.D. Va. 2010) (Davis, J.) (discussing the jurisdictional basis for prosecuting this offense in courts of the United States), aff'd sub nom., United States v. Dire, 680 F.3d 446 (4th Cir. 2012). Defendant stipulated to the facts necessary to sustain a conviction for this offense, pleaded guilty to the same, did not appeal his conviction or sentence, and did not file a motion under 18 U.S.C. § 2255 alleging that a jurisdictional defect invalidated his conviction. See ECF No. 208 (Plea Agreement); SOF. Indeed, the Fourth Circuit rejected a similar argument raised by Mohammad Saaili Shibin, the individual Defendant and his coconspirators intended to use as a ransom negotiator upon their return to Somalia. United States v. Shibin, 722 F.3d 233, 239-44 (4th Cir. 2013) (discussing Ker-Frisbie doctrine and other jurisdictional issues), cert. denied, 527 U.S. 789 (2014); see SOF ¶ 5 (discussing Shibin's role).[11] For these reasons, the court concludes that Defendant's

---

[11] The court recognizes that Defendant and Shibin played different roles in the conspiracy resulting in the seizure of the Quest. However, the Fourth Circuit's rejection of Shibin's similar jurisdictional arguments remains instructive.

jurisdictional-defect argument is baseless and does not warrant a sentence reduction.

### 5. Desire to Be with Family

Under Application Note 1(C) to U.S.S.G. § 1B1.13, extraordinary and compelling reasons for a reduction in sentence exist only upon "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." After McCoy, however, the court finds that, as a general matter, a defendant's desire to reunite with family for reasons other than those outlined in § 1B1.13 could constitute an extraordinary and compelling reason for release. See United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021) (noting that § 1B1.13 does not apply to prisoner-filed motions for compassionate release); United States v. Hankins, No. 2:12-cr-182, slip op. at 4-5 (E.D. Va. Mar. 16, 2021) (Smith, J.) (addressing potential for family circumstances to constitute "extraordinary and compelling reasons"). Still, Defendant's argument does not articulate an extraordinary or compelling reason for a reduction in sentence in this particular case. See United States v. Davis, --- F Supp. 3d ---, 2022 WL 220872, at *9 (E.D. Va. 2022) (Smith, J.) (reaching the same conclusion).

Defendant asks that the court reduce his sentence so that he can "return home to his mother and children in Somalia to be taken care of." ECF No. 1182 at 33. In his request for a sentence reduction to the warden, he explained that his "mother is 80 years old," that he is her only remaining son, and that "[s]he has no other family to help her with her daily living and dealing with her health care except" Defendant. Id. Ex. 3 at 2. Defendant's representations are inconsistent with the PSR, and Defendant does not support them with any evidence. See PSR ¶¶ 63-68 (discussing family history).

Though the court accepts that Defendant's mother is diagnosed with medical conditions requiring care, she is apparently only in her sixties. Id. ¶ 64 (noting that Defendant's mother was 55 as of September 2011). Defendant does not specify the type of care his mother requires, and also does not explain why his wife or two (2) sisters are unable to provide it. Id. ¶¶ 64, 66 (noting that his two sisters are "married and are both housewives" and that his first wife lives with his mother). The court also notes that as of Defendant's sentencing, his children were well cared for, and Defendant does not allege that this has changed while he has been incarcerated. See id. ¶¶ 66-67 (noting that his children live with their mothers).

Defendant fails to explain how his family situation has deteriorated so significantly since his sentencing as to warrant

20

his early release. Instead, it appears to the court that Defendant's argument simply describes the unfortunate consequences of a family member's commission of a violent crime and subsequent incarceration. He, therefore, does not describe an "unusual set of facts" that compel this court to reduce his sentence. See Extraordinary Circumstances, Black's Law Dictionary (9th ed. 2009) (defining "extraordinary circumstances" as follows: "A highly unusual set of facts that are not commonly associated with a particular thing or event."). Given this, the court finds that Defendant's argument does not identify an "extraordinary and compelling" reason for early release, and thus does not justify a sentence reduction under § 3582(c)(1)(A)(i). See Tucker v. United States, No. 2:17-cr-87, 2020 WL 4740480, at *3 (E.D. Va. Aug. 14, 2020) (Jackson, J.) (finding Defendant's "subjective desire to raise her son," alone did not justify sentence reduction).

In sum, none of the five issues raised by Defendant, individually or in combination, amount to the "extraordinary and compelling reasons" required to justify a reduction in sentence under § 3582(c)(1)(A)(i).

## B. SECTION 3553(a) FACTORS

A court may only reduce a defendant's sentence under § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable

21

. . . ." 18 U.S.C. § 3582(c)(1)(A). That said, "[s]ection
3582(c)(1) permits a district court to reduce a sentence in 'any
case' - not just cases where a sentence has been substantially
served; not just in cases involving low-level or non-violent
offenses." Kibble, 992 F.3d at 334 (Gregory, C.J., concurring)
(citing United States v. Gonzales, 520 U.S. 1, 5 (1997)). Even if
Defendant had presented "extraordinary and compelling reasons,"
the court finds that a reduction in sentence would not be proper
in this case, as the § 3553(a) factors weigh heavily against
Defendant's release. See Kibble, 992 F.3d at 330, 332 (majority
opinion affirming denial of a motion for compassionate release
where the defendant's "health conditions . . . amounted to
extraordinary and compelling circumstances," but "the § 3553(a)
factors counseled against a sentence reduction").

First, the court acknowledges and credits Defendant's
postconviction coursework, impressive institutional disciplinary
record, and other evidence of positive personal growth.[12] However,
the court observes that Defendant's offense conduct was extremely
serious, and that Defendant has served roughly eleven (11) years
of a (now) thirty-five (35) year sentence. Kibble, 992 F.3d at 331
(recognizing that district courts are "entitled to consider the
amount of time [defendants] ha[ve] served as one factor in the

---

[12] See supra Part III.A.3. (discussing Defendant's
postconviction conduct).

22

§ 3553(a) analysis" and citing <u>United States v. Chambliss</u>, 948 F.3d 691, 694 (5th Cir. 2020) and <u>United States v. Pawlowski</u>, 967 F.3d 327, 331 (3d Cir. 2020)). While the amount of time remaining on Defendant's sentence is not a dispositive factor, at this juncture, Defendant's initial steps towards rehabilitation do not outweigh the seriousness of Defendant's offense conduct. <u>See</u> <u>United States v. Bowser</u>, 539 F. Supp. 3d 572, 576-77 (E.D. Va. 2021) (Smith, J.) (denying motion for compassionate release, in part, on this basis).

Defendant's conviction stems from his participation in a violent act of piracy. <u>See</u> SOF; PSR ¶¶ 26-56. On February 18, 2011, off the coast of Somalia, Defendant and his co-defendants attacked the <u>Quest</u>, a United States flagged sailing vessel, intending to seize it and hold its crew for ransom. The captors bound and held the four Americans on board at gunpoint: Scott Underwood Adam, Jean Savage Adam, Phyllis Patricia Macay, and Robert Campbell Riggle. Upon learning of the attack, the United States Navy responded to rescue the four Americans. After some negotiation, On February 22, 2011, Defendant's co-conspirators opened fire on the rescuers with a rocket-propelled grenade, and a firefight ensued. Before the Navy could rescue the hostages, Defendant's co-conspirators killed the four Americans. Defendant was armed with an AK-47 at the time of the attack and guarded the hostages, though he apparently did not personally shoot any of the hostages

23

or fire his weapon. However, his conduct and participation remain, and he is not absolved of responsibility and for the profound impact his role in the offense had on the victims' families. See PSR ¶¶ 102-106 (discussing victim impact).

On this record, the court is satisfied that Defendant's already-reduced thirty-five (35) year sentence[13] is necessary "to reflect the seriousness of the offense, to promote respect for the law," "to afford adequate deterrence to criminal conduct," and, most importantly, "to protect the public from further crimes of the [D]efendant." 18 U.S.C. § 3553(a)(2)(A)-(C) (emphasis added). Defendant's lack of any recorded pre-offense criminal history does not tip the scales in favor of release given the particularly violent nature of his offense of Piracy Under the Law of Nations.

The court further concludes that Defendant's thirty-five (35) year prison sentence is not unduly harsh when compared to the sentences of similarly situated Defendants. See id. § 3553(a)(6). Defendant points to no example suggesting otherwise. Indeed, to the extent any sentencing disparity exists, it works in Defendant's favor, as offenders convicted today of the same offense Defendant committed face a mandatory life sentence. See 18 U.S.C. § 1651. As the court recently observed in its Memorandum Order denying a co-defendant's motion for compassionate release, this "mandatory

---

[13] See supra note 1 and accompanying text.

24

life sentence . . . 'reflects a rational legislative judgment . . . that piracy in international waters is a crime deserving of one of the harshest of penalties.'" Aqid, 555 F. Supp. 3d at 283 (quoting United States v. Said, 798 F.3d 182, 199 (4th Cir. 2015)).

For these reasons, Defendant's contention that his "sentence was abnormally long and unconstitutional from the beginning" rings hollow. ECF No. 1182 at 30. The Fourth Circuit has held that mandatory life sentences imposed on similarly situated defendants were constitutional. See Said, 798 F.3d at 195-200. And a reduction beyond what Defendant has already received simply would not promote the sentencing objectives aimed at preventing the type of horrific violence perpetrated in this case. In sum, Defendant's sentence remains "sufficient, but not greater than necessary," to achieve the aims of 18 U.S.C. § 3553(a).

## IV. CONCLUSION

Based on the foregoing, and having considered the effect of McCoy on Defendant's sentence, all the factors under 18 U.S.C. § 3553(a), and Defendant's offense conduct, criminal history, age at the time of the offense, and rehabilitation while incarcerated, Defendant's Motion for Compassionate Release, ECF No. 1182, is **DENIED.** The Judgment entered on October 7, 2011, ECF No. 343, as modified by the court's Order entered on October 14, 2014, ECF No. 954, remains in full force and effect.

The Clerk is **DIRECTED** to forward a copy of this Opinion to
Defendant, the United States Attorney at Norfolk, and the BOP.

**IT IS SO ORDERED.**

/s/

Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 6 , 2022

26